NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250843-U

NOS. 4-25-0843, 4-25-0844 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 2, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Ak. W. and Az. W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos. 22JA62 |
| v. | ) | 22JA64 |
| Twonda A., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2    In April 2025, the State filed a petition to terminate the parental rights of respondent, Twonda A., to her minor children, Ak. W. (born September 2009) and Az. W. (born June 2021). Following the fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. Respondent timely filed a notice of appeal, and counsel was appointed to represent her. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending there are no meritorious issues of procedure or substance to be raised on appeal that would warrant relief. We agree, grant counsel's motion to withdraw, and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4          In October 2022, the State filed a petition for adjudication of wardship for the minors pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)), contending the minors' environment was injurious to their welfare. The State also sought wardship of Ak. W.'s twin sister; however, the State, ultimately, did not seek to terminate respondent's parental rights regarding the twin sister, and she is not a party to this appeal. The petition alleged (1) respondent permitted a known and registered child sex offender to have unsupervised access to the minors, (2) Ak. W. was sexually abused by said sex offender, (3) Ak. W.'s twin sister witnessed said sexual abuse, (4) respondent refused to permit Ak. W. to access mental health services offered by the Illinois Department of Children and Family Services (DCFS), (5) respondent was physically abusive to the minors when angry, and (6) respondent consumed alcohol and drugs in the minors' presence. Following a hearing, the trial court entered a temporary custody order placing the minors in the custody of DCFS.

¶ 5          In February 2023, the trial court entered an adjudicatory order finding the minors neglected after respondent stipulated to the sexual abuse of Ak. W. In March 2023, the court entered a dispositional order making the minors wards of the court after finding respondent unable, for reasons other than financial circumstances, to properly care for the minors. Custody and guardianship of the minors was placed with DCFS, and respondent was ordered to cooperate with DCFS's directives.

¶ 6          In April 2025, the State filed an amended petition to terminate respondent's parental rights, alleging she was unfit for failing to make reasonable progress toward the return of the minors to her care within any nine-month period following the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2024)). The relevant nine-month periods were February 8, 2023, to November 8, 2023; November 8, 2023, to August 8, 2024; and August 8, 2024, to May 8, 2025.

¶ 7                                    A. Fitness Hearing

¶ 8            A fitness hearing was held on August 7, 2025. Kim Tonozzi, a caseworker for the minors, testified she was assigned to the case in November 2022. She stated respondent was required to cooperate with DCFS, obtain housing and employment, demonstrate competent parenting, and complete mental health services. She noted respondent maintained stable housing but only obtained part-time employment near the end of her service plan's reporting period. She stated respondent was unsuccessfully discharged from mental health services. Respondent reengaged in mental health services with a different provider, but the agency determined respondent was unsatisfactory in mental health services by not remaining consistently engaged and demonstrating progress. Regarding parenting, Tonozzi stated respondent was required to complete parenting classes, attend visits, cooperate, and demonstrate appropriate parenting skills. She said respondent completed a parenting class. Respondent also attended visits and cooperated with the agency. However, respondent was rated unsatisfactory for parenting skills due to being unsuccessfully discharged from the Parents as Teachers program and her failure to address safety concerns during home visits. Tonozzi noted respondent's visits were moved to the agency's facility and reduced.

¶ 9            Mariah Terstegge, a caseworker for the minors, testified she was assigned to the case in June 2024. Terstegge's testimony was largely consistent with Tonozzi's testimony. Terstegge also noted respondent was unable to satisfactorily articulate why the minors were originally placed in protective care. She stated respondent had not visited with the minors since March 2025.

¶ 10          Respondent presented no evidence.

¶ 11          The trial court noted respondent's visitation with the minors began supervised and

remained supervised throughout the nine-month periods. The court found respondent continually failed to demonstrate appropriate parenting skills and her visitation was suspended in June 2024 due to her lack of parenting skills. The court also noted respondent failed to complete mental health services and specifically discussed her failure to understand why the minors came into protective care. The court found respondent failed to make any substantial progress during the relevant nine-month periods. The court concluded the State had met its burden by clear and convincing evidence.

¶ 12                                      B. Best Interest Hearing

¶ 13        The matter proceeded directly to a best interest hearing. Terstegge testified the minors were originally placed with a family member who allowed a violent offender near the children, so they were moved to a traditional foster home in March 2024. She said the minors were bonded with their current foster parent. The foster parent ensured the minors' medical and mental health appointments were being attended and expressed a willingness to adopt the minors.

¶ 14        Respondent presented no evidence.

¶ 15        The trial court noted there was no evidence presented to show respondent had a current relationship with the minors and no evidence they may ever return to respondent's care. The court emphasized the need for permanency for the minors and noted the foster parent's willingness to adopt the minors. The court found the State had met its burden of proving it was in the best interest of the minors to terminate respondent's parental rights.

¶ 16        Respondent timely filed a notice of appeal, and the trial court appointed counsel to represent her. Appellate counsel filed a motion to withdraw pursuant to *Anders* and a supporting brief providing a statement of facts, a list of potential issues, and arguments as to why those issues lack arguable merit. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8 (finding *Anders* applies when

counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). Appellate counsel provided proof of service of her motion and a memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to respond.

¶ 17                                    II. ANALYSIS

¶ 18          Appellate counsel seeks to withdraw, contending there are no meritorious claims for review. Counsel indicates she considered whether the trial court's fitness and best interest findings were against the manifest weight of the evidence. Believing they were not, counsel opines any arguments presented to the contrary would be frivolous and patently without merit. After reviewing the record, we agree with counsel and conclude there are no meritorious arguments to be considered on appeal.

¶ 19                          A. Finding of Parental Unfitness

¶ 20          Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit if she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2024). Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). This court has explained reasonable progress exists when a trial court

> "can conclude that *** the court, in the *near future*, will be able to
>
> order the child returned to parental custody. The court will be able

to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *L.L.S.*, 218 Ill. App. 3d at 461). "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 21        In the case *sub judice*, the evidence showed respondent failed to complete the services recommended by DCFS. Specifically, she failed to complete mental health services and was unable to articulate the basis for the minors' removal from her care. Additionally, respondent failed to demonstrate appropriate parenting skills.

¶ 22        Based on the evidence presented, we agree with appellate counsel any argument the trial court's finding of unfitness was against the manifest weight of the evidence would be meritless. The court's determination respondent was an unfit parent is supported by the record and not against the manifest weight of the evidence.

¶ 23                              B. Best Interest Determination

¶ 24        After a trial court finds a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The trial court's best interest determination will not be reversed unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest

determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 25 At the best interest hearing, the State must prove by a preponderance of the evidence termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 26 In this case, the evidence demonstrated the minors' needs were being met by their current foster parent. They had developed a bond and were appropriately cared for. The foster parent indicated a willingness to adopt them. Additionally, the trial court noted there was no

evidence presented to suggest their reunification with respondent was likely in the foreseeable future.

¶ 27        As a reviewing court, we afford great deference to a trial court's best interest findings because it sits in a superior position to observe the witnesses and judge their credibility. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. Based on our review of the evidence, we agree with appellate counsel any argument it was not in the minors' best interest to terminate respondent's parental rights would be meritless. The court's best interest findings were based on an appropriate consideration of the statutory factors. Accordingly, we conclude the court's best interest determination was not against the manifest weight of the evidence.

¶ 28                                III. CONCLUSION

¶ 29        For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 30        Affirmed.